IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MATTHEW W. BARNETT
ADC #135607                                                                                                    PLAINTIFF

VS.                         NO. 4:13-CV-00347-SWW-HDY

AMERICOM BANK and
DIRECT EXPRESS PAYMENT
PROCESSING SERVICES                                                                              DEFENDANTS

## DECLARATION OF NORA ARPIN

I, Nora Arpin, hereby declare the following:

1.  I am the Vice President at Comerica, Inc. I have been in my position since April 2007. I have personal knowledge of the testimony in my declaration or rely upon business records created and maintained in the ordinary course of business by Comerica, Inc.

2.  In 2008, The U.S. Department of the Treasury's Financial Management Service (FMS) announced that The Direct Express® Debit MasterCard®, a prepaid debit card for Social Security payments and other federal benefits, would be available for Social Security and Supplemental Security Income check recipients ("SSI Recipients"). The Direct Express® Debit MasterCard® card was designed as a safe, convenient alternative to paper checks that SSI Recipients without bank accounts may choose.

3.  Comerica is a financial agent of the U.S. Department of the Treasury for the issuance of the Direct Express® Debit MasterCard®. The U.S. Department of the Treasury engaged Comerica Bank to issue this nationally available card

1194499-v1

exclusively for payment of federal benefits. Comerica Bank does not have a customary depository bank account relationship with a Direct Express® Card holder. Rather, Comerica has a contractual relationship with the Direct Express® cardholders through the Terms of Use.

4.  Comerica Bank is a subsidiary of Comerica Incorporated, a $67 billion financial services company headquartered in Dallas, Texas. Comerica Bank and its vendor and authorized agent, Xerox State & Local Solutions, Inc., formerly known as ACS State & Local Solutions, Inc. ("Xerox"), have been serving state and local governments since 2003. Since that time, they have worked together to implement and operate debit card programs in 13 states, representing 25 benefit and payment programs and servicing more than 2.5 million recipients in all U.S. states, territories, Canada, Mexico, and many foreign countries.

5.  All actions on Direct Express® cardholder accounts, including the actions referenced in the paragraphs below, are and were taken either directly by Comerica or indirectly through its authorized agent, Xerox. All actions taken by Comerica, either directly or through Xerox, were done in an effort to comply with federal regulations.

6.  Comerica Bank offers a competitive cardholder fee schedule that allows benefit recipients to use the debit card at little or no cost. Most services are free to the cardholder. In addition, Comerica Bank offers several ways to allow a cardholder to keep track of his or her transactions and balance, including an option that allows the cardholder to receive free automated text, email or telephone

messages about their deposits and balance.  Comerica Bank also offers a surcharge-free ATM network of almost 50,000 ATMs throughout the country.

7. SSI Recipients can use the card to withdraw cash from ATMs, make purchases at stores that accept Debit MasterCard®, and get cash back when making those purchases.  An SSI Recipient can also use the debit card for online bill pay and to buy money orders at the U.S. Post Office.

8. A cardholder has access to his or her card account balance and transaction history free of charge through the Direct Express customer service number and at the Direct Express web site, www.USDirectExpress.com.  For a fee, a cardholder can also receive written statements each month.  Cardholders have a right to receive a written summary of transactions for the 60 days preceding their request by calling the Direct Express customer service number or emailing Direct Express through its website.

9. Comerica and its agents, acting on its behalf, collect nonpublic personal information about the SSI Recipients who use the Direct Express® MasterCard® card (e.g., their name, address, telephone number, social security number, and date of birth) from several sources.  Comerica maintains physical and procedural safeguards that comply with federal regulations to guard the aforementioned nonpublic personal and financial information.  One such safeguard is that once an alert has been placed on an account, no further actions can be taken unless and until the cardholder verifies the account and his or her identity.  A cardholder can verify his or her account by supplying Comerica with two forms of

identification.

10.     In addition to the required verification, Comerica has an additional procedural safeguard that prevents the sending of nonpublic personal and/or financial information to inmates or others at correctional facilities. Sending nonpublic personal and financial information to incarcerated individuals puts their private financial information at risk for identity theft. Because these individuals are not (or should not be) receiving benefits through the SSA, nonpublic personal and financial account information through the Direct Express® program is (or should be) frozen as well.

11.     According to the terms of use for a Direct Express® Debit MasterCard® card, an SSI Recipient using a Direct Express® card agrees not to give or otherwise make his or her card available to others. If an SSI Recipient does give or otherwise make his or her card available to another, he or she is responsible for any transactions conducted by the third party, even if they exceeded the SSI Recipient's authorization.

12.     Mr. Barnett enrolled in the Direct Express® Debit MasterCard® card program in 2009.

13.     On or about February 22, 2013, Comerica received a letter from Mr. Barnett, in which he stated he was incarcerated and did not have access to his card. In that letter, Mr. Barnett requested that Comerica suspend his account. Upon receipt of this letter, an alert was placed on Mr. Barnett's account. As stated above, once an alert has been placed on an account, no further actions can be taken unless

4

and until the cardholder verifies the account and his or her identity by providing two forms of identification.

14. Comerica received a second letter from Mr. Barnett on or about March 11, 2013, in which he requested the balance of his account and his financial statements. Comerica did not comply with Mr. Barnett's request because of the alert on his account. Moreover, the address to which Mr. Barnett requested the information be sent was not the address on file for the account. In order to send the information as instructed in Mr. Barnett's letter, a change of address request would have to be processed and approved. A cardholder must verify his or her identity in order to process a change of address request.

15. Comerica received a third letter from Mr. Barnett on or about April 1, 2013, in which he again requested a written account summary. Pursuant to the procedural safeguards mentioned above, all of which are in place for his protection, Comerica decided not to send his account information to the prison.

16. Mr. Barnett called the Direct Express customer service number on or about April 3, 2013. During his conversation with the customer service representative, Mr. Barnett asked the customer service representative to cancel his card, send him a written copy of all account statements from January through March, and provide his balance information. An alert had already been placed on Mr. Barnett's account pursuant to his request on or about February 22, 2013. The customer service representative gave Mr. Barnett his balance information of $282.90 and informed him of two automated teller machine ("ATM") transactions on

5

2/8/2013 and 2/11/2013 in the amounts of $302.00 and $102.00 respectively. The customer service representative informed Mr. Barnett that because of the alert on the account, he would be unable to provide a written account summary or balance statements without account verification. Mr. Barnett was unable to provide the information necessary to verify the account and change his address. As a result, the written information requested was not provided.

17. Comerica received additional letters from Mr. Barnett on or about April 19, 2013, April 30, 2013, and July 23, 2013, in which he requested account summaries and balance statements. In accordance with its policies and the procedural safeguards referenced above, Comerica did not provide the information requested.

18. I declare under penalty of perjury that the foregoing is true and correct.

*Nora Arpin* (signature)
Nora Arpin

November 25, 2013
Date