# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

MATTHEW W. BARNETT                                                                    PLAINTIFF

v.                              NO. 4:13CV00347 SWW/HDY

AMERICOM BANK and DIRECT EXPRESS                                          DEFENDANTS
PAYMENT PROCESSING SERVICES

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following findings and recommendation have been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to these findings and recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the Office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendation. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, Arkansas 72201-3325

## FINDINGS AND RECOMMENDATION

INTRODUCTION. Defendant Comerica, Inc., ("Comerica") has filed a motion for summary judgment. See Document 80.[1] Liberally construing the pro se pleadings of plaintiff Matthew W. Barnett ("Barnett"), he too has filed a motion for summary judgment. See Document 89. For the reasons that follow, the undersigned recommends that Comerica's motion be granted, Barnett's motion be denied, his complaint be dismissed, and judgment be entered for Comerica.

FACTS. The undersigned has thoroughly reviewed the record and finds the following material facts to be undisputed:

1. In 2008, the United States Department of Treasury's Financial Management Service ("FMS") began a program whereby a recipient of Social Security benefits could receive benefits electronically onto a Direct Express Debit Mastercard ("Direct Express Card"). See Document 80, Exhibit 2, Declaration of Nora Arpin at 1.

2. The financial agent designated by the FMS to issue the Direct Express Card was Comerica Bank, a subsidiary of Comerica, Inc., see Document 80, Exhibit 2, Declaration of Nora Arpin at 1-2, and Comerica issued the pre-paid debit card pursuant to a license granted by Mastercard International, Inc., see Document 82 at 3.

---

[1] Rule 56(a) provides, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

3. Comerica does not have a "customary depository bank account relationship" with the holders of the Direct Express Card; instead "Comerica has a contractual relationship with the ... cardholders through the Terms of Use." <u>See</u> Document 80, Exhibit 2, Declaration of Nora Arpin at 2.

4. "Those terms describe the cardholder's rights and Comerica's rights regarding the card, the cardholder's use of the card, and the cardholder's card account." <u>See</u> Document 82 at 4.

5. Comerica's Vice-President, Nora Arpin ("Arpin"), prepared a declaration in support of Comerica's motion in which she made the following representations about the use of the Direct Express Card, all of which the undersigned accepts as true:

> A cardholder has access to his or her card account balance and transaction history free of charge through the Direct Express customer service number and at the Direct Express web site, www.USDirectExpress.com. For a fee, a cardholder can also receive written statements each month. Cardholders have a right to receive a written summary of transactions for the 60 days preceding their request by calling the Direct Express customer service number or emailing Direct Express through its website.
>
> Comerica and its agents, acting on its behalf, collect nonpublic personal information about the SSI Recipients who use the Direct Express Mastercard card (e.g., their name, address, telephone number, social security number, and date of birth) from several sources. Comerica maintains physical and procedural safeguards that comply with federal regulations to guard the aforementioned nonpublic personal and financial information. One such safeguard is that once an alert has been placed on an account, no further actions can be taken unless and until the cardholder verifies the account and his or her identity. A cardholder can verify his or her account by supplying Comerica with two forms of identification.

>In addition to the required verification, Comerica has an additional procedural safeguard that prevents the sending of nonpublic personal and/or financial information to inmates or others at correctional facilities. Sending nonpublic personal and financial information to incarcerated individuals puts their private financial information at risk for identity theft. Because these individuals are not (or should not be) receiving benefits through the SSA, nonpublic personal and financial account information through the Direct Express program is (or should be) frozen as well.
>
>According to the terms of use for a Direct Express Debit MasterCard card, an SSI Recipient using a Direct Express card agrees not to give or otherwise make his or her card available to others. If an SSI Recipient does give or otherwise make his or her card available to another, he or she is responsible for any transactions conducted by the third party, even if they exceeded the SSI Recipient's authorization.

See Document 80, Exhibit 2, Declaration of Nora Arpin at 3-4.

6. Barnett began receiving benefits from the Social Security Administration in 2004, and he enrolled in the FMS program in 2009. See Document 2 at 3.[2]

7. In 2012, he was charged with a criminal offense in Pulaski County, Arkansas, and thereafter contracted with Bryce's Bail Bonding, Inc., ("Bryce's") for help in securing his release on bail. See Document 2, Exhibit C at 3.

8. His agreement with Bryce's appears to have been that he would make an initial payment toward securing his release and then make monthly payments until the terms of the contract were satisfied. See Document 2, Exhibit C at 3.

---

[2] Barnett was at that time, and may still be, under the mistaken impression that his benefits would be paid into a bank, a bank he identified as "Americom Bank." See Document 2 at 3. Although clearly mistaken, his understanding of the FMS program was that it allowed his benefits to be "directly deposited into said bank." See Document 2 at 3.

9. Barnett appears to have made the initial payment and then began making monthly payments; some of the monthly payments were made at rather odd locations, two payments were allegedly made on Main Street in North Little Rock, Arkansas, and at the Ritz Motel in Little Rock, Arkansas, to a man only identified as "Dan," whom Barnett believes to have been a Bryce's employee. See Document 2, Exhibit C at 3-4.

10. Barnett represents, and the undersigned accepts as true, that the following then occurred:

> ... On December 6, 2012, I went for sentencing. Dan was outside the courtroom; however, so that I would not breach the contract, knowing once in jail I cannot personally use my debit card, Dan took possession of my debit card so I could pay my $150.00 monthly fee. I did withdraw all my December 2012 funds prior to December 6, 2012, give or take $10.00.

See Document 2, Exhibit C at 4.

11. At that point, he entered the custody of the Arkansas Department of Correction. See Document 82 at 4.

12. While Barnett was incarcerated, "Dan" or some other unidentified individual used Barnett's Direct Express Card to make a number of unauthorized withdrawals. See Document 2, Exhibit C at 4-5.[3]

---

[3] In Barnett's combined motion for summary judgment and response to Comerica's motion for summary judgment, though, he represents that he called "Dan" from "jail" and authorized him to make several withdrawals with the Direct Express Card. See Document 89, clerk's pagination 79 of 130. Barnett maintains that "Dan" exceeded the authorization given him and made several unauthorized withdrawals on the Direct Express Card.

13. When Barnett discovered the unauthorized withdrawals, he did two things. First, he commenced litigation against Bryce's. See Barnett v. Bryce's Bail Bonding, Inc., 1:13CV00049 JLH. He alleged in his complaint that a representative of Bryce's made unauthorized withdrawals on Barnett's Direct Express Card. United States District Judge J. Leon Holmes dismissed the case for lack of subject matter jurisdiction, and his dismissal was affirmed on appeal, save an issue regarding Barnett's responsibility for paying the initial partial appellate filing fee. See Barnett v. Bryce's Bail Bonding, Inc., 534 Fed.Appx. 579 (8th Cir. 2013).

14. Second, Barnett contacted Comerica. Arpin represents, and the undersigned accepts as true, that Barnett had the following contact with Comerica:

> On or about February 22, 2013, Comerica received a letter from … Barnett in which he stated he was incarcerated and did not have access to his card. In that letter, [he] requested that Comerica suspend his account. Upon receipt of this letter, an alert was placed on [his] account. …
>
> Comerica received a second letter from … Barnett on or about March 11, 2013, in which he requested the balance of his account and his financial statement. Comerica did not comply with [his] request because of the alert on his account. Moreover, the address to which [he] requested the information be sent was not the address on file for the account. In order to send the information as instructed in [his] letter, a change of address request would have to be processed and approved. A cardholder must verify his or her identity in order to process a change of address request.
>
> Comerica received a third letter from … Barnett on or about April 1, 2013, in which he again requested a written account summary. Pursuant to the procedural safeguards …, Comerica decided not to send his account information to the prison.

> … Barnett called the Direct Express customer service number on or about April 3, 2013. During his conversation with the customer service representative, … Barnett asked the customer service representative to cancel [Barnett's] card, send him a written copy of all account statements from January through March, and provide his balance information. An alert had already been placed on … Barnett's account pursuant to his request on or about February 22, 2013. The customer service representative gave … Barnett his balance information of $282.90 and informed him of two automated teller machine … transactions on 2/8/2013 and 2/11/2013 in the amounts of $302.00 and 102.00 respectively. The customer service representative informed … Barnett that because of the alert on the account, [the customer service representative] would be unable to provide a written account summary or balance statements without account verification. … Barnett was unable to provide the information necessary to verify the account and change his address. As a result, the written information requested was not provided.
>
> Comerica received additional letters from … Barnett on or about April 19, 2013, April 30, 2013, and July 23, 2013, in which he requested account summaries and balance statements. In accordance with its policies and the procedural safeguards …, Comerica did not provide the information requested.

See Document 80, Exhibit 2, Declaration of Nora Arpin at 4-6.

15. When Barnett failed to obtain the information he desired, he commenced the case at bar.

BARNETT'S PLEADINGS. Barnett commenced this case by filing a complaint and joining Americom Bank and Direct Express Payment Processing Services as defendants. It was later determined that the proper defendant was Comerica. He was granted leave to amend his complaint to join Comerica, and Americom Bank and Direct Express Payment Processing Services were dismissed from the case.

A concise summary of Barnett's voluminous complaints and pleadings is extremely difficult. Liberally construing his pleadings, he appears to seek damages for Comerica's refusal to provide him with a copy of his balance summary and transaction history and for refusing to transfer monies to another bank. He so maintains on the basis of six legal theories: breach of fiduciary duty, breach of contract, negligence, tort of outrage, writ of replevin, and for money had and received.

ANALYSIS. As a preliminary matter, two points are worthy noting. First, the Terms of Use provide the following: "The funds in your Card Account are deemed held in the State of Michigan. Unless a federal law or regulation applies to a specific section of these Terms or use of the Card, these Terms will be governed by and interpreted in accordance with the laws of the State of Michigan." See Document 80, Exhibit 3 at 2. Thus, the undersigned will apply Michigan law with respect to Barnett's contract claim. With respect to his tort and extra-contractual claims, though, the undersigned will apply Arkansas law as this case is a diversity case.

Second, Comerica devotes attention to matters that, while interesting, are not particularly germane to a resolution of this litigation. For instance, Comerica devotes attention to the reporting responsibilities of a recipient of Social Security benefits, e.g., he is required to report if he is incarcerated. See Document 82 at 4-5. The redress for the violation of those responsibilities, though, is likely for the Social Security Administration, not Comerica.

Barnett first advances a claim for breach of a fiduciary duty. "A person standing in a fiduciary relationship may be held liable for any conduct that breaches a duty imposed by the fiduciary relationship." See Allen v. Allison, 356 Ark. 403, 155 S.W.3d 682, 691 (Ark.S.Ct. 2004). "[R]egardless of the express terms of an agreement, a fiduciary may be held liable for conduct that does not meet the requisite standards of fair dealing, good faith, honesty, and loyalty." See Id. Assuming, arguendo, that Comerica owed Barnett a fiduciary duty, the material facts establish that Comerica did not breach the duty. Barnett unwisely gave his Direct Express Card to another person. Once Comerica was notified of the unauthorized withdrawals, it properly placed an alert on Barnett's account. He then sought his account information, but he failed to comply with the requirements for lifting the alert and gaining access to the information. It is also significant that he asked the information to be sent to him at a penal institution. Comerica declined to do so because he did not provide a proper change of address. Although he maintains he asked that his address be changed, the undersigned is not prepared to say that Comerica erred in refusing to recognize the change of address. He continued to contact Comerica, one purpose of which was to have monies transferred to another bank, but Comerica refused to remove the alert on his account because he failed to complete the appropriate requirements for doing so. The undersigned is not prepared to find that Comerica erred in refusing his requests but instead finds that it took acceptable actions entirely for his own benefit.

Barnett advances a claim for breach of contract. "A party claiming a breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." See Miller-Davis Company v. Ahrens Construction, Inc., 296 Mich.App. 56, 817 N.W.2d 609, 619 (Mich.App. 2012). Assuming, arguendo, that the Terms of Use are a binding contract between the parties, the material facts establish that Comerica did not breach its contract with Barnett. It is true that the Terms of Use grant a cardholder the right to a written summary of transactions for the sixty days preceding a request, and it is undisputed that Comerica did not provide Barnett with such a summary, at least not when he requested it. Nevertheless, Comerica did not violate the Terms of Use. The undersigned so finds for at least two reasons. First, once Comerica was notified of the unauthorized withdrawals, it properly placed an alert on Barnett's account, the impact of which was to suspended all activity. Second, he never properly verified his identity in order for Comerica to remove the alert and transfer monies to another bank. Although he maintains that he did so by both mail and telephone, the undersigned is not prepared to find that Comerica erred when it rejected his attempts to verify his identity or provide Comerica with a change of address. In addition, the material facts establish that Barnett suffered no damages. As Comerica notes, "[a]ny damages incurred by [him] are directly attributable to actions by him for which he solely is liable." See Document 81 at 14.

Barnett advances a claim for negligence, and the undersigned assumes, <u>arguendo</u>, that he can advance a tort claim in what otherwise appears to be a contractual setting. A prima facie case of negligence requires proof that the plaintiff "sustained damages, that [the defendant] was negligent, and that such negligence was a proximate cause." <u>See</u> <u>Schubert v. Target Stores, Inc</u>., 2010 Ark. 466, 369 S.W.3d 717, 719 (Ark.S.Ct. 2010). "[N]egligence is the failure to do something that a reasonably careful person would do, or the doing of something that a reasonably careful person would not do." <u>See</u> <u>Id</u>. The material facts establish that Comerica did nothing more than refuse to honor Barnett's requests for a copy of his balance summary and transaction history and to transfer monies to another bank. Assuming, <u>arguendo</u>, that those actions are distinct from the duties imposed upon Comerica by the Terms of Use, the material facts establish that Comerica did not fail to do something that a reasonably careful issuer of a pre-paid debit card would do or do something that a reasonably careful issuer of a pre-paid debit card would not do. Once Comerica was notified of the unauthorized withdrawals, it properly placed an alert on Barnett's account suspending all activity. Comerica subsequently declined his requests for account information because he failed to comply with the requirements for lifting the alert. Comerica also refused his requests to transfer monies to another bank but did so because the alert on his account had not been lifted. The undersigned is not prepared to find that Comerica erred in refusing his requests but instead finds that it took acceptable actions entirely for his own benefit.

Barnett advances a claim for the tort of outrage, and the undersigned assumes, arguendo, that he can advance a tort claim in what otherwise appears to be a contractual setting. To establish an outrage claim, a plaintiff must demonstrate, inter alia, "that the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized society" and "the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it." See Allen Allison, 155 S.W.3d at 691. The material facts establish that Comerica did nothing more than refuse to honor Barnett's requests for a copy of his balance summary and transaction history and to transfer monies to another bank. Assuming, arguendo, that those actions are distinct from the duties imposed upon Comerica by the Terms of Use, the material facts establish that Comerica's conduct was

not extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized society. Comerica would have been derelict had it not placed an alert on Barnett's account after being notified of the unauthorized withdrawals, and it acted in a reasonably prudent manner in insisting upon proper verification from him and a proper change of address. As the undersigned noted above, Comerica took acceptable actions entirely for his own benefit. Moreover, the undersigned cannot say that the emotional distress sustained by Barnett was so severe that no reasonable person could be expected to endure it. He simply had his account suspended and failed to complete the requirements for lifting the alert.

Barnett last advances claims for replevin and for money had and received. "Replevin is a possessory action, it being incumbent on the plaintiff to show that he is entitled to immediate possession of the chattel in question." See Akins v. Pierce, 263 Ark. 15, 563 S.W.2d 406, 407 (Ark.S.Ct. 1978). "An action for money had and received lies where the defendant, not being the mere servant or agent of the plaintiff, has received actual money belonging to the plaintiff." See Johnson v. Ditlinger, 140 Ark. 509, 215 S.W. 694, 695 (Ark.S.Ct. 1919). The material facts establish that although Comerica received money belonging to Barnett, it did so only as the issuer of his pre-paid debit card, and he has not shown that he took the appropriate steps to lift the alert placed on his account and gain access to his account information and monies.

CONCLUSION. None of the six legal theories advanced by Barnett justify imposing liability upon Comerica for the situation that began when he unwisely gave his Direct Express Card to another person, and the undersigned knows of no other legal theory that might justify imposing liability. Comerica acted appropriately in placing an alert on his account, and although the undersigned might think that his repeated letters and telephone calls might have been sufficient to remove the alert and/or cause monies to be transferred to another bank, the undersigned is not prepared to find that Comerica acted inappropriately in refusing to do so. Accordingly, the undersigned recommends that Comerica's motion be granted, Barnett's motion be denied, his complaint be dismissed, and judgment be entered for Comerica.

DATED this   27   day of January, 2014.

_____
UNITED STATES MAGISTRATE JUDGE